UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Guang Hong Zhou, Lin Qiang Zhou, Zhi Fang Pan, and
Zhong Wei Ren, Individually and on behalf of All Other
Employees Similarly Situated,

                                    Plaintiffs,

                    - against -                              Case No. 18-cv-1010

Lili's 200 West 57th Corp. d/b/a Lili's 57,                 **COLLECTIVE & CLASS**
792 Restaurant Food Corp. d/b/a Lilli and Loo              **ACTION COMPLAINT**
Alan Phillips,
Siew Moy Low,
Jonah Phillips,
John Doe, a/k/a Ephan,
and Jane Doe, a/k/a Migi

                                    Defendants.

---

Plaintiffs Guang Hong Zhou, Lin Qiang Zhou, Zhi Fang Pan, and Zhong Wei Ren on

their own behalf and on behalf of all others similarly situated, by and through their undersigned

attorneys, Hang & Associates, PLLC, hereby file this amended complaint against the Defendants

Lili's 200 West 57th Corp. d/b/a Lili's 57, 792 Restaurant Food Corp. d/b/a Lilli and Loo, Alan

Phillips, Siew Moy Low, Jonah Phillips, John Doe (legal name unknown), a/k/a Ephan, and Jane

Doe (legal name unknown), a/k/a Migi, (collectively "Defendants"), alleges and shows the Court

the following:

## **INTRODUCTION**

1.    This is an action brought by Plaintiffs on their own behalf and on behalf of similarly

        situated employees, alleging violations of the Fair Labor Standards Act, 29 U.S.C.

        § 201 et seq. ("FLSA") and the New York Labor Law, arising from Defendants'

        various willful and unlawful employment policies, patterns and/or practices.

2.    Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay their employees, including Plaintiffs, compensation for all hours worked, minimum wage, and overtime compensation for all hours worked over forty (40) each workweek.

3.    The FLSA allows employers of "tipped employees" to pay their tipped employees at a rate below the federal and state minimum wages. 29 U.S.C. §203(m).

4.    The FLSA provides that in order to be eligible for this "tip credit," employers of tipped employees must allow employees to keep all the tips that they receive. *Id*

5.    An employer may take a tip credit towards overtime wages as well in the amount of the tip credit, but only if the employer is entitled to the tip credit in the first instance. *See Copantitla v. Fiskardo Estiatorio, Inc*., 788 F. Supp. 2d 253, 300 (S.D.N.Y. 2011).

6.    Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid wages and minimum wages, (2) unpaid overtime wages, (3) liquidated damages, (4) prejudgment and post-judgment interest, (5) expenses Plaintiffs incurred on behalf of Defendants, and (6) attorneys' fees and costs.

7.    Plaintiffs further allege pursuant to New York Labor Law § 650 et seq. and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the Defendants: (1) unpaid wages and minimum wages, (2) unpaid overtime compensation, (3) unpaid "spread of hours" premium for each day they worked ten (10) or more hours, (4) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime

pursuant to the NY Wage Theft Prevention Act; (5) compensation for failure to provide wage notice at the time of hiring in violation of the NYLL, (6) prejudgment and post-judgment interest; and (7) attorney's fees and costs.

## JURISDICTION AND VENUE

8.    This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

9.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

10.    Plaintiff Guang Hong Zhou is a resident of Kings and was employed to work as a delivery person by Defendants' Asian restaurant located at 200 West 57th Street, New York, NY 10019 from 2006 to January 31, 2018.

11.    Plaintiff Lin Qiang Zhou is a resident of Queens and was employed to work as a delivery person by Defendants' Asian restaurant located at 200 West 57th Street, New York, NY 10019 from June 2005 to present.

12.    Plaintiff Zhi Fang Pan is a resident of Kings and was employed to work as a delivery person by Defendants' Asian restaurant located at 200 West 57th Street, New York, NY 10019 from 2010 to March 18, 2016.

13.    Plaintiff Zhong Wei Ren is a resident of Kings and was employed to work as a delivery person by Lili's 200 West 57th Corp. d/b/a Lili's 57 located at 200 West

57th Street, New York, NY 10019. He was sometimes also asked to help out at 792 Restaurant Food Corp. d/b/a Lilli and Loo located at 792 Lexington Avenue, New York, NY 10065.

## DEFENDANTS

14. Defendant Lili's 200 West 57th Corp., d/b/a "Lili's 57" is a domestic business corporation organized under the laws of the State of New York with a principal address at 200 West 57th Street, New York, NY 10019.

15. Upon information and belief, Defendant Lili's 200 West 57th Corp., d/b/a "Lili's 57" is an Asian Restaurant had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year. Upon information and belief, Lili's 57 purchased and handled goods moved in interstate commerce.

16. Defendant 792 Restaurant Food Corp, d/b/a "Lilli and Loo" is a domestic business corporation organized under the laws of the State of New York with a principal address at 792 Lexington Avenue, New York, NY 10065.

17. Upon information and belief, Defendant, 792 Restaurant Food Corp, d/b/a "Lilli and Loo," an Asian Restaurant, had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year. Upon information and belief, Lilli and Loo purchased and handled goods moved in interstate commerce.

18. Upon information and belief, Defendant Alan Phillips is the owner, officer, director, manager, shareholder, and/or agent of Lili's 200 West 57th Corp. d/b/a Lili's 57 located at 200 West 57th Street, New York, NY 10019, and 792 Restaurant Food Corp. d/b/a Lilli and Loo located at 792 Lexington Avenue, New York, NY 10065. He participated in the day-to-day operations of Lili's 57 and Lilli & Loo, and acted

intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with the above-mentioned two Corporate Defendants.

19.    Upon information and belief, Defendant Alan Phillips owns the stock of Lili's 57 as well as Lilli & Loo, and manages and makes all business decisions including but not limited to the amount in salary the employee will receive and the number of hours employees will work.

20.    Upon information and belief, Defendant Siew Moy Low is the owner, officer, director, manager, shareholder, and/or agent of Lili's 200 West 57th Corp. d/b/a Lili's 57 located at 200 West 57th Street, New York, NY 10019, and 792 Restaurant Food Corp. d/b/a Lilli and Loo located at 792 Lexington Avenue, New York, NY 10065.  He participated in the day-to-day operations of Lili's 57 and Lilli & Loo, and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with the above-mentioned two Corporate Defendants.

21.    Upon information and belief, Defendant Siew Moy Low owns the stock of Lili's 57 as well as Lilli & Loo, and manages and makes all business decisions including but not limited to the amount in salary the employee will receive and the number of hours employees will work.

22.    Upon information and belief, Defendant Jonah Phillips is the owner, officer, director, manager, shareholder, and/or agent of 792 Restaurant Food Corp. d/b/a

Lilli and Loo located at 792 Lexington Avenue, New York, NY 10065.  She participated in the day-to-day operations of Lilli & Loo, and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Lilli & Loo.

23.    Upon information and belief, Defendant Jonah Phillips owns the stock of Lilli & Loo, and manages and makes all business decisions including but not limited to the amount in salary the employee will receive and the number of hours employees will work.

24.    Upon information and belief, Defendant John Doe (legal name unknown), a/k/a "Ephan" is the owner, officer, director, manager, shareholder, and/or agent of Lili's 200 West 57th Corp. d/b/a Lili's 57 located at 200 West 57th Street, New York, NY 10019, and 792 Restaurant Food Corp. d/b/a Lilli and Loo located at 792 Lexington Avenue, New York, NY 10065.  He participated in the day-to-day operations of Lili's 57 and Lilli & Loo, and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with the above-mentioned two Corporate Defendants.

25.    Upon information and belief, Defendant John Doe (legal name unknown), a/k/a "Ephan" owns the stock of Lili's 57 as well as Lilli & Loo, and manages and makes all business decisions including but not limited to the amount in salary the employee will receive and the number of hours employees will work.

26.     Upon information and belief, Defendant Jane Doe (legal name unknown), a/k/a
        "Migi" is the owner, officer, director, manager, shareholder, and/or agent of Lili's
        200 West 57th Corp. d/b/a Lili's 57 located at 200 West 57th Street, New York, NY
        10019, and 792 Restaurant Food Corp. d/b/a Lilli and Loo located at 792 Lexington
        Avenue, New York, NY 10065.  She participated in the day-to-day operations of
        Lili's 57 and Lilli & Loo, and acted intentionally and maliciously and is an employer
        pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29
        C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally
        liable with the above-mentioned two Corporate Defendants.

27.     Upon information and belief, Defendant Jane Doe (legal name unknown), a/k/a
        "Migi" owns the stock of Lili's 57 as well as Lilli & Loo, and manages and makes
        all business decisions including but not limited to the amount in salary the employee
        will receive and the number of hours employees will work.

28.     At all times relevant herein, Lili's 57 as well as Lilli & Loo are, and continue to be,
        "enterprises engaged in commerce" within the meaning of FLSA.

29.     Upon information and belief, Lili's 200 West 57th Corp. d/b/a Lili's 57 and 792
        Restaurant Food Corp. d/b/a Lilli and Loo are all members of pan-Asian restaurant
        chain.

30.     At all times relevant herein, Lili's 57 as well as Lilli & Loo are, and continue to be,
        joint employers and has had a high degree of interrelated and unified operation, and
        share common management, centralized control of labor relations, common
        ownership, common control, common website, common business purposes and
        interrelated business goals.

31.    Lili's 57 as well as Lilli & Loo shared employees, freely assigning and scheduling employees among the stores based on the stores' necessity. For instance, a cashier, goes by the nickname "Nikki", from Lili's 57 was assigned to help out at Lilli & Loo. Plaintiff Zhong was also asked to help at Lilli & Loo when there were not enough delivery persons on duty at the latter restaurant.

32.    Lili's 57 as well as Lilli & Loo share common supervisory authority, and they are operated and controlled by owners Alan Phillips, Siew Moy Low and Jonah Phillips.

33.    Jane Doe (legal name unknown), a/k/a "Migi" and John Doe (legal name unknown), a/k/a "Ephan" managed both Lili's 57 and Lilli & Loo. They exercised managerial power over both the above-mentioned restaurants, for example, to hire and fire employees, set employees' schedules, compensate employees, discipline employees, so on and so forth.

34.    Lili's 57 as well as Lilli & Loo share common ownership, control, and pay practices.

35.    Upon information and belief, the unique Chinese calligraphy "品味," which is created by a specific person, is both on the website Lili's 57 and the business sign of Lilli & Loo. *See* Exhibit III

36.    At all relevant times, the work performed by Plaintiffs were directly essential to the businesses operated by Defendants' two restaurants.

37.    At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff his lawfully earned minimum wages, overtime compensation and spread-of-hour premiums, and failed to provide him a wage notice at the time of hiring in violation of the NYLL.

38.   Plaintiff has fulfilled all conditions precedent to the institution of this action and/ or conditions have been waived.

## STATEMENT OF FACTS

39.   Defendants committed the following alleged acts knowingly, intentionally and willfully.

40.   Defendants knew that the nonpayment of minimum wage, overtime pay, spread of hours pay, and failure to provide the required wage notice at the time of hiring would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

### *Plaintiff Guang Hong Zhou*

41.   From 2006 to January 31, 2018, Plaintiff Guang Hong Zhou was hired by Defendants to work as a delivery person for Lili's 200 West 57th Corp. d/b/a Lili's 57 located at 200 West 57th Street, New York, NY 10019.

42.   Defendants did not compensate Plaintiff Guang Hong Zhou for minimum, overtime compensation, and spread-of-hours pay according to state and federal laws.

43.   From February 5, 2012 to June 15, 2016, Plaintiff worked five days a week with Sunday and Monday off. He worked three different shifts on alternate weeks. When he worked the "early shift," he worked from 10:30 a.m. to 9:30 p.m. on Tuesday, Wednesday, and Thursday; from 10:30 a.m. to 11:30 p.m. on Friday and Saturday. When he worked the "middle shift," he worked from 11:00 a.m. to 10:30 p.m. on Tuesday, Wednesday, and Thursday; from 11:00 a.m. to 11:30 p.m. on Friday and Saturday. When he worked the "late shift," he worked from 12:00 p.m. to 11:30 p.m. on every working day. Therefore, Plaintiff Guang Hong Zhou worked for a

total of fifty-nine (59) hours per week when he was on the "early shift," a total of sixty hours and thirty minutes (60.5 hours) per week when he was on the "middle shift" and the "late shift."

44.    From June 16, 2016 to May 15, 2017, Plaintiff Guang Hong Zhou's daily and working schedule remained the same with that mentioned in Paragraph 43, except he took a one-and-a-half-hour break on each working day. Therefore, Plaintiff Guang Hong Zhou worked for a total of fifty-one hours and thirty minutes (51.5 hours) per week when he was on the "early shift," a total of fifty-three (53) hours per week when he was on the "middle shift" and the "late shift."

45.    From May 16, 2017 to January 31, 2018, Plaintiff Guang Hong Zhou's weekly shift remained the same with that mentioned in Paragraph 43 but his daily schedule for the three shifts changed. When he worked the "early shift," he worked from 10:30 a.m. to 9:00 p.m. with a 1.5-hour-break on Tuesday, Wednesday, and Thursday; from 10:30 a.m. to 10:30 p.m. with no break on Friday and Saturday. When he worked the "middle shift," he worked from 11:30 a.m. to 10:00 p.m. with a 1.5-hour-break on Tuesday, Wednesday, and Thursday; from 11:30 a.m. to 10:30 p.m. with no break on Friday and Saturday. When he worked the "late shift," he worked from 12:00 p.m. to 10:30 p.m. with a 1.5-hour-break on Tuesday, Wednesday, and Thursday; and from 12:00 p.m. to 10:30 p.m. with no break on Friday and Saturday. Therefore, Plaintiff Guang Hong Zhou worked for a total of fifty-one (51) hours per week when he was on the "early shift," a total of forty-nine (49 hours) per week when he was on the "middle shift," and a total of forty-two (42) hours when he was on the "late shift."

46.     Plaintiff Guang Hong Zhou was paid a fixed weekly rate of $226 on average from February 2012 to May 31, 2015; a fixed weekly rate of $320 from June 1, 2015 to December 31, 2015; and a fixed weekly rate of $484 from January 1, 2016 to January 31, 2018.

47.     Plaintiff Guang Hong Zhou was paid every week by check.

**_Plaintiff Lin Qiang Zhou_**

48.     From June 2005 to present, Plaintiff Lin Qiang Zhou was hired by Defendants to work as a delivery person for Lili's 200 West 57th Corp. d/b/a Lili's 57 located at 200 West 57th Street, New York, NY 10019.

49.     Defendants did not compensate Plaintiff Lin Qiang Zhou for minimum, overtime compensation, and spread-of-hours pay according to state and federal laws.

50.     From February 5, 2012 to June 15, 2016, Plaintiff worked five days a week with Friday and Saturday off. He worked three different shifts on alternate weeks. When he worked the "early shift," he worked from 10:30 a.m. to 9:30 p.m.; When he worked the "middle shift," he worked from 11:00 a.m. to 10:30 p.m.; When he worked the "late shift," he worked from 12:00 p.m. to 11:30 p.m. on every working day. He had no break on any working days during this period. Therefore, Plaintiff Lin Qiang Zhou worked for a total of fifty-five (55) hours per week when he was on the "early shift," a total of fifty-seven and thirty minutes (57.5 hours) per week when he was on the "middle shift" and the "late shift."

51.     From June 16, 2016 to May 15, 2017, Plaintiff Lin Qiang Zhou's daily and working schedule remained the same with that mentioned in Paragraph 50, except he took a one-and-a-half-hour break on each working day. Therefore, Plaintiff Lin Qiang

Zhou worked for a total of forty-seven hours and thirty minutes (47.5 hours) per week when he was on the "early shift," a total of fifty (50) hours per week when he was on the "middle shift" and the "late shift."

52.    From May 16, 2017 to January 31, 2018, Plaintiff Lin Qiang Zhou's weekly shift remained the same with that mentioned in Paragraph 50, but his daily schedule for the three shifts changed. When he worked the "early shift," he worked from 10:30 a.m. to 9:00 p.m. with a 1.5-hour-break on Monday, Tuesday, Wednesday, and Thursday; from 11:30 a.m. to 9:00 p.m. with no break on Sunday. When he worked the "middle shift," he worked from 11:30 a.m. to 10:00 p.m. with a 1.5-hour-break on Monday, Tuesday, Wednesday, and Thursday; either from 11:30 a.m. to 9:00 p.m. or from 12:00 p.m. to 10:30 p.m. with no break on Sunday. When he worked the "late shift," he worked from 12:00 p.m. to 10:30 p.m. with a 1.5-hour-break on Monday, Tuesday, Wednesday, and Thursday; and from 12:00 p.m. to 10:30 p.m. with no break on Sunday. Therefore, Plaintiff Lin Qiang Zhou worked for a total of forty-five hours and thirty minutes (45.5 hours) per week when he was on the "early shift," a total of forty-six (46) hours per week when he was on the "middle shift," and a total of forty-six and thirty minutes (46.5 hours) when he was on the "late shift."

53.    Plaintiff Lin Qiang Zhou was paid a fixed weekly rate of $174 on average from February 2012 to April 30, 2012; a fixed weekly rate of $240 from May 1, 2012 to December 31, 2015; a fixed weekly rate of $352 from January 1, 2016 to December 31, 2017; and a fixed weekly rate of $406 from January 1, 2018 until now.

54.    Plaintiff Lin Qiang Zhou was paid every week by check.

*Plaintiff Zhi Fang Pan*

55.    From 2010 to March 18, 2016, Plaintiff Pan was hired by Defendants to work as a delivery person for Lili's 200 West 57th Corp. d/b/a Lili's 57 located at 200 West 57th Street, New York, NY 10019.

56.    Defendants did not compensate Plaintiff Pan for minimum, overtime compensation, and spread-of-hours pay according to state and federal laws.

57.    From 2010 to approximately December 31, 2012, Plaintiff worked six days a week with Thursday off. He worked three different shifts on alternate days. When he worked the "early shift," he worked from 10:30 a.m. to 9:30 p.m. on Monday, Tuesday, Wednesday, and Friday; from 5:00 p.m. to 11:00 p.m. on Sunday and Saturday. When he worked the "middle shift," he worked from 11:00 a.m. to 10:30 p.m. on Monday, Tuesday, Wednesday, and Friday; from 5:00 p.m. to 11:00 p.m. on Sunday and Saturday. When he worked the "late shift," he worked from 12:00 p.m. to 11:30 p.m. on Monday, Tuesday, Wednesday, and Friday; from 5:00 p.m. to 11:00 p.m. on Sunday and Saturday. He had no break on any working days for this period. Therefore, Plaintiff Zhi Fang Pan worked for a total of fifty-eight (58) hours on average per week.

58.    From January 2013 to March 18, 2016, Plaintiff Pan's daily working schedule remained the same with that mentioned in Paragraph 57, except that he worked on the three different shifts on alternate weeks instead of days, and that he took only Wednesday and Saturday off. Therefore, Plaintiff Pan worked for a total of fifty-five (55) hours per week when he was on the "early shift," a total of fifty-seven and

thirty minutes (57.5 hours) per week when he was on the "middle shift" and the "late shift."

59.    Plaintiff Pan was paid a fixed weekly rate of $114 on average from February 2012 to May 31, 2015; a fixed weekly rate of $226 from June 1, 2015 to December 31, 2015; and a fixed weekly rate of $348 from January 1, 2016 to March 18, 2016.

60.    Plaintiff Pan was paid every week by check.

***Plaintiff Zhong Wei Ren***

61.    From November 2005 to present, Plaintiff Zhong was hired by Defendants to work as a delivery person for Lili's 200 West 57th Corp. d/b/a Lili's 57 located at 200 West 57th Street, New York, NY 10019. He was sometimes also asked to help out at 792 Restaurant Food Corp. d/b/a Lilli and Loo located at 792 Lexington Avenue, New York, NY 10065.

62.    Defendants did not compensate Plaintiff Zhong for minimum, overtime compensation, and spread-of-hours pay according to state and federal laws.

63.    From February 5, 2012 to June 15, 2016, Plaintiff worked five days a week with Sunday and Tuesday off. He worked three different shifts on alternate weeks. When he worked the "early shift," he worked from 10:30 a.m. to 9:00 p.m.; When he worked the "middle shift," he worked from 11:00 a.m. to 10:30 p.m.; When he worked the "late shift," he worked from 12:00 p.m. to 11:00 p.m. on Monday, Wednesday and Thursday, and from 12:00 p.m. to 11:30 p.m. on Friday and Saturday. He had no break on any working days during this period. Therefore, Plaintiff Zhong worked for a total of fifty-two and thirty minutes (52.5) hours per week when he was on the "early shift," a total of fifty-seven and thirty minutes (57.5

hours) per week when he was on the "middle shift," and a total of fifty-six (56) hours when he was on the "late shift."

64.    From June 16, 2016 to May 15, 2017, Plaintiff worked five days a week with Sunday and Tuesday off. He worked three different shifts on alternate weeks. When he worked the "early shift," he worked from 10:30 a.m. to 9:30 p.m.; When he worked the "middle shift," he worked from 11:00 a.m. to 10:30 p.m.; When he worked the "late shift," he worked from 12:00 p.m. to 11:30 p.m. on every working day. He had a 1.5-hour break on any working days during this period. Therefore, Plaintiff Zhong worked for a total of forty-five hours and thirty minutes (45.5 hours) per week when he was on the "early shift," a total of forty-six (46) hours per week when he was on the "middle shift," and a total of forty-six and thirty minutes (46.5 hours) when he was on the "late shift."

65.    From May 16, 2017 to January 31, 2018, Plaintiff Zhong's weekly shift remained the same with that mentioned in Paragraph 64 but his daily schedule for the three shifts changed. When he worked the "early shift," he worked from 10:30 a.m. to 9:00 p.m.; when he worked the "middle shift," he worked from 11:30 a.m. to 10:00 p.m.; when he worked the "late shift," he worked from 12:00 p.m. to 10:30 p.m. He had a 1.5-hour break on each working day except on Saturday. Therefore, Plaintiff Zhong worked for a total of forty-six hours and thirty minutes (46.5 hours) per week for this period.

66.    Plaintiff Zhong was paid a fixed weekly rate of $226 on average from February 2012 to May 31, 2015; a fixed weekly rate of $266 from June 1, 2015 to December

31, 2015; a fixed weekly rate of $352 from January 1, 2016 to December 31, 2017; and a fixed weekly rate of $406 from January 1, 2018 until now.

67. Plaintiff Zhong was paid every week by check.

68. Plaintiffs often worked more than ten (10) hours in a workday. However, Defendants willfully and intentionally failed to compensate Plaintiffs with an additional one hour's pay at the full minimum wage for each day his workday exceeded ten (10) hours, as required spread-of-hours pay under New York law.

69. Defendants failed to compensate Plaintiffs for minimum wage and/or overtime compensation according to state and federal laws.

70. Defendants did not provide Plaintiffs with a wage notice, at the time of his hiring, in English and in Mandarin (Plaintiffs' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

71. Defendants also did not provide Plaintiffs with proper statement of wages with each wage payment, as required by NYLL §195(3).

72. Defendants committed the following alleged acts knowingly, intentionally and willfully.

73. Defendants knew that the nonpayment of overtime and the "spread of hours" premium would economically injure Plaintiffs and the Class Members by their violation of state laws.

74. While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

75.    Plaintiffs and the New York Class Members' workdays always lasted longer than 10 hours.

76.    Defendants did not pay Plaintiffs and other Class members' New York's "spread of hours" premium for every day in which they worked over 10 hours.

77.    Defendants did not provide Plaintiffs and other Class members with written notices about the terms and conditions of their employment upon hire in relation to their rate of pay, regular pay cycle and rate of overtime pay. These notices were similarly not provided upon Plaintiff' and other Class members' pay increase(s).

78.    Defendants' unlawfully tip pooling system prevented Plaintiffs other class members from receiving their due share that they were supposed to receive from the "tip pool."

79.    Defendants committed the foregoing acts against the Plaintiffs, the FLSA Collective and the NYLL Class.

80.    Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to Plaintiffs or other similarly situated employees.

81.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

82.    Defendants knowingly and willfully operated their business with a policy of unlawfully tip pooling system and prevent Plaintiffs and other similarly situated

employees from receiving their amount of tips they were supposed to receive from the "tip pool."

83.    Defendants knowingly and willfully operated their business with a policy of not paying the New York State "spread of hours" premium to Plaintiff and other class members.

## COLLECTIVE ACTION ALLEGATIONS

84.    Plaintiffs bring this action individually and on behalf of all other and former non-exempt tipped employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom failed to receive minimum wages and overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members") under the FLSA, and have been subject to the same common decision, policy, and plan to not provide required wage notices at the time of hiring, in contravention to federal and state labor laws.

85.    Upon information and belief, the Collection Action Members are so numerous the joinder of all members is impracticable. The identity and precise number of such persons are unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of the Defendants. Upon information and belief, there are more than twenty (20) Collective Action members, who have worked for or have continued to work for the Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys,

or knowledge of their claims. Therefore, Plaintiff submits that this case should be certified as a collection action under the FLSA, 29 U.S.C. §216(b).

86. Plaintiffs will fairly and adequately protect the interests of the Collective Action Members, and has retained counsel that is experienced and competent in the field of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

87. This action should be certified as collective action because the prosecution of separate action by individual members of the collective action would risk creating either inconsistent or varying adjudication with respect to individual members of this class that would as a practical matter be dispositive of the interest of the other members not party to the adjudication, or subsequently impair or impede their ability to protect their interests.

88. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

89. Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of fact common to Plaintiff and other Collective Action Members are:

a. Whether the Defendants employed Collective Action members within the meaning of the FLSA;

b. Whether the Defendants failed to pay the Collective Action Members the minimum wage in violation of the FLSA and the regulations promulgated thereunder;

c. Whether the Defendants failed to pay the Collective Action Members overtime wages for all hours worked above forty (40) each workweek in violation of the FLSA and the regulation promulgated thereunder;

d. Whether the Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

e. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

90. Plaintiff know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

91. Plaintiff and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

## CLASS ACTION ALLEGATIONS

92. Plaintiff bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt tipped employees employed by Defendants at Mister Hotpot on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

93. All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members

are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P 23.

94.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

95.    Plaintiff' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, overtime compensation, and "spread of hours" compensation. Defendants' corporation wide policies and practices, including but not limited to their failure to provide a wage notice at the time of hiring, affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

96.    Plaintiff are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff are represented by attorneys who are

experienced and competent in representing plaintiffs in both class action and wage and hour employment litigation cases.

97.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. The losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, thus the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the

Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

98.    Upon information and belief, defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

99.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendants employed Plaintiff and the Class within the meaning of the New York law;

b. Whether Defendants paid Plaintiff and Class members the New York minimum wage for all hours worked;

c. Whether Plaintiff and Class members were paid proper overtime compensation for all hours they worked over 40 under the New York Labor Law;

d. Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiff and the Rule 23 Class spread-of-hours pay as required by the NYLL;

e. Whether the Defendants provided wage notices at the time of hiring to Plaintiff and class members as required by the NYLL;

f. At what common rate, or rates subject to common method of calculation were and are the Defendants required to pay the Class members for their work;

## STATEMENT OF CLAIM

### COUNT I

**[Violations of the Fair Labor Standards Act—Minimum Wage
Brought on behalf of the Plaintiff and the FLSA Collective]**

100.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

101.  At all relevant times, upon information and belief, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. §§206(a) and §§207(a). Further, Plaintiff is covered within the meaning of FLSA, U.S.C. §§206(a) and 207(a).

102.  At all relevant times, Defendants employed "employees" including Plaintiff, within the meaning of FLSA.

103.  Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

104.  The FLSA provides that any employer engaged in commerce shall pay employees the applicable minimum wage. 29 U.S.C. § 206(a).

105.  At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiff, and the collective action members, for some or all of the hours they worked.

106.  The FLSA provides that any employer who violates the provisions of 29 U.S.C. §206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages.

107.    Defendants knowingly and willfully disregarded the provisions of the FLSA
as evidenced by failing to compensate Plaintiff and Collective Class Members
at the statutory minimum wage when they knew or should have known such was
due and that failing to do so would financially injure Plaintiff and Collective Action
members.

## COUNT II

### [Violation of New York Labor Law—Minimum Wage
### Brought on behalf of Plaintiff and Rule 23 Class]

108.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as
though fully set forth herein.

109.    At all relevant times, plaintiff was employed by Defendants within the meaning of
New York Labor Law §§2 and 651.

110.    Pursuant to the New York Wage Theft Prevention Act, an employer who fails to
pay the minimum wage shall be liable, in addition to the amount of any
underpayments, for liquidated damages equal to the total of such under-payments
found to be due the employee.

111.    Defendants knowingly and willfully violated Plaintiff's and Class Members' rights
by failing to pay them minimum wages in the lawful amount for hours worked.

## COUNT III

### [Violations of the Fair Labor Standards Act—Overtime Wage
### Brought on behalf of the Plaintiff and the FLSA Collective]

112.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though
fully set forth herein.

113.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

114.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages.  29 USC §216(b).

115.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

116.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half  to Plaintiff and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA,  29  U.S.C. §§201, et seq., including 29 U.S.C. §§207(a)(1) and 215(a).

117.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

118.    Defendants willfully failed to notify Plaintiff and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff's and FLSA Collectives' labor.

119.   Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

## COUNT IV
### [Violation of New York Labor Law—Overtime Pay
### Brought on behalf of Plaintiff and the Rule 23 Class]

120.   Plaintiff re-alleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

121.   Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay proper overtime compensation shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

122.   Defendants' failure to pay Plaintiff and the Rule 23 Class their overtime pay violated the NYLL.

123.   Defendants' failure to pay Plaintiff and the Rule 23 Class was not in good faith.

## COUNT V
### [Violation of New York Labor Law—Spread of Time Pay
### Brought on behalf of Plaintiff and the Rule 23 Class]

124.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

125.   The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§190, et seq., and §§650, et seq., and New York State Department of Labor regulations §146-1.6.

126.  Defendants' failure to pay Plaintiff and Rule 23 Class spread-of-hours pay was not in good faith.

## COUNT VI
### [Violation of Fair Labor Standards Act — Failure to Reimburse for Expenses relating to Tools of Trade Brought on Behalf of Plaintiff and the FLSA Collective]

127.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

128.  At all relevant times, Defendants had a policy and practice of refusing to reimburse Plaintiff for expenses incurred in relation to tools of the trade used by the Plaintiff and the Collective Class in order to deliver food to customers of Defendants.

129.  Defendants failed to pay completely Plaintiff Pan for expenses incurred in relation to tools of the trade, that is, Plaintiff lost and had to buy with his own money to purchase four electric bikes (each one costed around $1,600) in order to perform deliveries; Plaintiff Pan incurred $1,000 tickets on average each year, Plaintiff Pan also spent around $200 on average per year on the repair and maintenance of the electric bike due to his performing the delivery duty.

130.  Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to reimburse Plaintiffs and Collective Class Members the expenses incurred in relation to tools of the trade used by Plaintiffs when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Class members.

## COUNT VII
### [Violation of New York Labor Law—Failure to Provide Wage Notice at the Time of Hiring]

131.  Plaintiffs on behalf of themselves and all other similarly situated Collective Action

Members and members of the Class repeat and re-allege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

132.    The Defendants failed to furnish to the Plaintiff at the time of hiring a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL, § 195(1).

133.    Due to the Defendants' violation of the NYLL, § 195(1), the Plaintiff is entitled to recover from the Defendants liquidated damages of $50.00 per workweek that the violation occurred, up to a maximum of $2,500.00, reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL, § 198(1-b).

134.    The Defendants failed to furnish with each wage payment a statement listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross

wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of the NYLL, § 195(3).

135.    Due to the Defendants' violation of the NYLL, § 195(3), the Plaintiff is entitled to recover from the Defendants liquidated damages of $100.00 per workweek that the violation occurred, up to a maximum of $2,500.00, reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL, § 198(1-d).

136.    The Defendants' NYLL violations have caused the Plaintiff irreparable harm for which there is no adequate remedy at law.

**COUNT VII**
**[Violation of New York Labor Law—New York Pay Stub Requirement]**

137.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

138.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

139.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' payday.

140.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law N.Y. Lab. Law §198(1-d).

**<u>Prayer for Relief</u>**

**WHEREFORE**, Plaintiffs, on behalf of themselves, the FLSA collective and Rule 23 class, respectfully request that this court enter a judgment providing the following relief:

a)      Authorizing plaintiffs at the earliest possible time to give notice of this collective

action, or that the court issue such notice, to all persons who are presently, or have been

employed by defendants as non-exempt tipped employees. Such notice shall inform them

that the civil notice has been filed, of the nature of the action, of their right to join this

lawsuit if they believe they were denied proper hourly compensation and premium

overtime wages;

b)      Certification of this case as a class action pursuant to rule 23 of the federal rules

of civil procedure;

c)      Designation of Plaintiff as representatives of the Rule 23 Class, and counsel of

record as Class counsel;

d)      Certification of this case as a collective action pursuant to FLSA;

e)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated

members of the FLSA opt-in class, apprising them of the pendency of this action, and

permitting them to assert timely FLSA claims and state claims in this action by filing

individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff

and his counsel to represent the Collective Action Members;

f)      A declaratory judgment that the practices complained of herein are unlawful

under FLSA and New York Labor Law;

g)      An injunction against Lili's 57 and Lilli & Loo, their officers, agents, successors,

employees, representatives and any and all persons acting in concert with them as

provided by law, from engaging in each of unlawful practices and policies set forth

herein;

h)      An award of unpaid wages and minimum wages due Plaintiffs and the Collective

Action members under the FLSA and New York Labor Law, plus compensatory and liquidated damages in the amount of one hundred percent under NY Wage Theft Prevention Act, and interest;

i)     An award of unpaid overtime wages due under FLSA and New York Labor Law;

j)     An award of unpaid "spread of hours" premium due under the New York Labor Law;

k)     An award of damages for Defendants' failure to provide wage notice and accurate paystubs at the time of hiring as required under the New York Labor Law;

l)     An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages, minimum wages and overtime compensation pursuant to 29 U.S.C. §216;

m)     An award of unpaid reimbursements related to tools of trade due under FLSA plus compensatory and liquidated damages;

n)     An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

o)     The cost and disbursements of this action;

p)     An award of prejudgment and post-judgment fees;

q)     Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

r)     Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated:  Flushing, New York February 5, 2018        HANG & ASSOCIATES, PLLC.

                                                  */S/* RUI MA

                                                  Rui Ma, Esq.
                                                  136-20 38th Ave., Suite 10G
                                                  Flushing, New York 11354
                                                  Tel: 718.353.8588
                                                  rma@hanglaw.com
                                                  *Attorneys for Plaintiffs*

# EXHIBIT I

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by 792 Restaurant Corp and/or related entities.
I consent to be a plaintiff in an action to collect unpaid wages.  I agree that I am bound by the
terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

*Guang Hong ZHOU*
Full Legal Name (Print)

*Guang Hong ZHOU*
Signature

*1X/24/18*
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by 792 Restaurant Corp and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

LIN QIANG ZHOU
Full Legal Name (Print)

Signature

1/26/18
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by 792 Restaurant Food Corp. and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

*Pour zhi Fang*

Full Legal Name (Print)

Signature

2018. 1. 30.

Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by 792 Restaurant Corp. and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

ZHONG WEI REN
_____
Full Legal Name (Print)

_____
Signature

1-29-18
_____
Date

# EXHIBIT II

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY**
**FOR SERVICES RENDERED**

TO:    Alan Phillips

Lili's 200 West 57th Corp.
200 West 57th Street
New York, NY 10019

792 Restaurant Food Corp.
792 Lexington Avenue
New York, NY 10065


PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Guang Hong Zhou, Lin Qiang Zhou, Zhi Fang Pan, Zhong Wei Ren and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of Lili's 200 West 57th Corp. and 792 Restaurant Food Corp. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them for the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.


Dated: February 5, 2018

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
FOR SERVICES RENDERED**

TO:    Siew Moy Low

Lili's 200 West 57th Corp.
200 West 57th Street
New York, NY 10019

792 Restaurant Food Corp.
792 Lexington Avenue
New York, NY 10065


PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Guang Hong Zhou, Lin Qiang Zhou, Zhi Fang Pan, Zhong Wei Ren and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of Lili's 200 West 57th Corp. and 792 Restaurant Food Corp. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them for the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.


Dated: February 5, 2018

# NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
## FOR SERVICES RENDERED

TO:     Jonah Phillips

792 Restaurant Food Corp.
792 Lexington Avenue
New York, NY 10065


PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Guang Hong Zhou, Lin Qiang Zhou, Zhi Fang Pan, Zhong Wei Ren and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of 792 Restaurant Food Corp. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them for the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.


Dated: February 5, 2018

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY**
**FOR SERVICES RENDERED**

TO: John Doe (legal name unknown), a/k/a "Ephan"

Lili's 200 West 57th Corp.
200 West 57th Street
New York, NY 10019

792 Restaurant Food Corp.
792 Lexington Avenue
New York, NY 10065

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Guang Hong Zhou, Lin Qiang Zhou, Zhi Fang Pan, Zhong Wei Ren and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of Lili's 200 West 57th Corp. and 792 Restaurant Food Corp. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them for the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

Dated: February 5, 2018

## NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY FOR SERVICES RENDERED

TO: Jane Doe (legal name unknown), a/k/a "Migi"

Lili's 200 West 57th Corp.
200 West 57th Street
New York, NY 10019

792 Restaurant Food Corp.
792 Lexington Avenue
New York, NY 10065

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Guang Hong Zhou, Lin Qiang Zhou, Zhi Fang Pan, Zhong Wei Ren and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of Lili's 200 West 57th Corp. and 792 Restaurant Food Corp. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them for the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

Dated: February 5, 2018

# EXHIBIT III



